IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RUBY HUGHES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:06cv732-WC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff Ruby Hughes (hereinafter Plaintiff or Hughes) applied for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381 (2000), alleging that she was unable to work because of a disability.[1] Her applications were denied at the initial administrative level. Hughes then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claims in part, awarding benefits for a closed period of time and, subsequently, terminating her benefits. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the

---

[1] The undersigned notes that Hughes previously filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act; those applications were denied initially. Tr. at 18. Hughes did not appeal those initial denial determinations. Accordingly, those decisions are not subject to review in this action. The undersigned further observes that a copy of those determinations does not appear in the record.

final decision of the Commissioner of Social Security (Commissioner).[2]  See Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the Court for review under 42 U.S.C. §§ 405(g), 1631(c)(3).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction ( Doc. #5); Def.'s Consent to Jurisdiction (Doc. #6).  Based on its review of the record and the briefs of the parties, the Court reverses and remands the decision of the Commissioner.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

To make this determination,[3] the Commissioner employs a five step, sequential evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920 (2006).

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar

---

[4] McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. See, e.g., Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1981) (Unit A).

> presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ISSUES

#### *A.   Introduction*

Hughes was thirty-nine years old at the time of the hearing before the ALJ and had completed eleven years of education as well as one year of business school. Tr. at 422. Hughes's prior work experience includes work as a cashier, keyholder, waitress, warehouse worker, manager, eye technician, telephone representative, and sales associate. Tr. at 89, 112, 422-23. Following the administrative hearing, the ALJ concluded that Hughes had two severe impairments. Tr. at 35. He further found that from November 15, 2002, through September 26, 2003, Hughes was not disabled. Tr. at 37. But, he awarded Hughes benefits for a closed period beginning September 27, 2003, through November 8, 2004. Tr. at 37. In light of medical improvement in Hughes' condition, the ALJ terminated Hughes' benefits beginning November 9, 2004, through April 26, 2005. Id.

#### *B.   Hughes' Claims*

Hughes presents two issues for review: (1) whether the ALJ's finding of medical improvement was supported by substantial evidence, and (2) whether the ALJ's credibility determination was supported by substantial evidence. Plf.'s Brief in Supp.

Soc. Sec. Appeal (Doc. #14) at 10-15 (hereinafter Pl.'s Br.).

Employing the five step process, ALJ Murchison found that Hughes has not engaged in substantial gainful activity since the alleged onset date (Step 1);[5] has two severe impairments, panic/anxiety disorder and chronic pain disorder (Step 2); the impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth in the listings (Step 3); and Hughes cannot perform any past relevant work because those jobs exceed her mental residual functional capacity (RFC) (Step 4). Tr. at 35-36. Hughes had established her *prima facie* case.

At Step Five, the ALJ states he evaluated Hughes's mental and physical RFC and also received testimony from a vocational expert regarding the availability in significant numbers of other work Hughes could perform in the national economy. Upon consideration of the record, including the vocational expert's testimony, the ALJ determined Hughes possessed the RFC to perform jobs that exist in significant numbers in the national economy during the period November 15, 2002, through September 26, 2003. Tr. at 37. Consequently, the ALJ found Hughes was disabled during this period. Tr. at 37. Notwithstanding that determination, the ALJ found that during the period beginning September 27, 2003, through November 8, 2004, Hughes could not perform substantial gainful activity on a sustained basis. The ALJ accordingly found Hughes

---

[5] Under the "Findings" section the ALJ notes "[t]here is no evidence that the claimant engaged in substantial gainful activity since November 15, 2002, her alleged disability onset date." Tr. at 35. He further notes that Hughes "engaged in an unsuccessful work attempt which ended September 26, 2003." Id.

entitled to disability benefits for this period.  Tr. at 37.  In light of improvement in Hughes' medical condition, and upon consideration of Hughes' vocational background and her RFC, beginning November 9, 2004, through April 26, 2005, the ALJ determined Hughes possessed the RFC to perform jobs that exist in significant numbers in the national economy and terminated her benefits.  Id.

## IV.   DISCUSSION

### A.   *Medical Improvement*

The Court turns first to Hughes' medical improvement argument.  Hughes argues that the ALJ's decision her medical condition improved beginning November 9, 2004, is unsupported by substantial evidence.  Specifically, Hughes argues that the ALJ's conclusion is premised on her condition stabilizing, rather than improving or decreasing in severity.  Pl.'s Br. at 11.  She also denies that increased supplies of medication and longer intervals between doctor visits do not demonstrate improvement.  Id. at 12.  While she concedes that her treating physician's treatment "was limited to prescribing medications," Hughes further argues that she had always taken Xanax, a prescribed medication for her anxiety, on as needed-basis, rather than on a prescribed schedule.  Id. at 12.  Finally, Hughes argues that the ALJ failed to compare medical evidence of Hughes' condition from before November 9, 2004, to evidence from after that date.  Id. at 10-11.  She specifically maintains that the ALJ failed to compare Hughes' condition on November 9, 2004, to the opinions of a clinical psychologist from December 2003 and a consultative psychiatrist from September 2004.  Id. at 11.  The Commissioner counter

argues that the ALJ's decision is supported by substantial evidence. Def.'s Br. at 4-7.

As indicated above, the ALJ's disability determination involves three distinct time periods. The first time period runs from November 15, 2002, through September 26, 2003. Hughes does not dispute the ALJ's determination that she was not disabled during this period. The second time period spans September 27, 2003, through November 8, 2004. Hughes, naturally, does not dispute the ALJ's conclusion that she was disabled during this period (emphasis added). The third time period runs from November 9, 2004, to April 26, 2005, the date in which the ALJ rendered his decision. Tr. at 37. Hughes' medical improvement argument disputes the ALJ's decision to terminate benefits during this third time period.

The ALJ awarded benefits for the second time period only, a "closed period" of disability.[6] He subsequently decided to terminate those benefits, because he found that Hughes' panic/anxiety disorder had experienced a medical improvement. Tr. at 32-33. The ALJ found Hughes experienced a medical improvement sufficient to warrant the denial of further disability benefits, because, in comparing the treatment notes of Kevin Hornsby, M.D. (Dr. Hornsby), Hughes' treating physician, from July 12, 2004, and November 9, 2004, Hughes' panic/anxiety disorder was "stable" on medication; Hughes did not specifically complain about adverse medication side effects or panic attacks;

---

[6] "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." Pickett v. Bowen, 833 F.2d 288, 289 n. 1 (11th Cir. 1987).

Hughes' monthly maintenance appointments were changed to a quarterly basis; Hughes' prescribed medications were increased in supply; Hughes complied with the schedule for prescribed medications; and additional treatment notes following November 9, 2004, through March 2005 do not indicate Hughes' panic/anxiety syndrome "deteriorated or returned to the previous level of severity." Tr. at 30-33.

> The Commissioner defines "medical improvement" as
>
> any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s).

20 C.F.R. § 404.1594(b)(1). In essence, the Commissioner's regulations require (1) that there be improvement in a claimant's medical condition and (2) that the improvement relate to the claimant's ability to work. Id.

In assessing whether there is medical improvement, the Commissioner must compare the severity of the claimant's current impairments to the severity of the impairments when the claimant most recently was found to be disabled. 20 C.F.R. § 416.994(b)(1)(vii), (b)(2)(i). If there has been no decrease in medical severity, there has been no medical improvement. 20 C.F.R. §§ 416.994(b)(5)(iii).[7] The Court observes that

---

[7] The remainder of the analysis, though not relevant to the issue presented here, is as follows: If medical improvement is shown through objective medical evidence, the Commissioner next must compare the claimant's current residual functional capacity to his residual functional capacity at the time the claimant most recently was found to be disabled to determine whether the medical improvement is related to the claimant's ability to do work. 20 C.F.R. §§ 416.994(b)(2)(ii-iii), (b)(5)(iv). If the claimant has experienced medical improvement related to

this medical improvement standard applies to cases, such as here, involving a closed period of disability. Pickett, 833 F.2d at 291-93; Waters v. Barnhart, 276 F.3d 716, 719 (5th Cir. 2002) (citing Shepherd v. Apfel, 184 F.3d 1196, 1200 (10th Cir. 1999); Jones v. Shalala, 10 F.3d 522, 524 (7th Cir. 1993); Chrupcala v. Heckler, 829 F.2d 1269, 1274 (3d Cir.1987) ("Fairness would certainly seem to require an adequate showing of medical improvement whenever an ALJ determines that disability should be limited to a specified period.")).

The ALJ heavily relied on a comparison of Dr. Hornsby's treatment notes from July 12, 2004, with those from November 9, 2004, to reach his medical improvement conclusion. The July treatment notes provide that Hughes complained of increased anxiety and episodes of heart racing and palpitations. Hughes' panic/anxiety disorder was assessed as "worsening" and "uncontrolled," resulting in an increased dosage of Zoloft. Tr. at 369. While the November treatment notes indicate that Hughes' panic/anxiety disorder was assessed as stable on an increased dosage of Zoloft and Hughes had "no complaints," the note also explicitly indicates that "there has been no

---

his ability to do work, the Commissioner then must determine whether the claimant's current impairments are severe. 20 C.F.R. § 416.994(b)(5)(vi). If the claimant's current impairments are not severe, the claimant is no longer disabled. Id. If the claimant's current impairments are severe, the Commissioner must then determine whether the claimant, based on his current residual functional capacity, can perform his past relevant work. 20 C.F.R. § 416.994(b)(5)(vii). If so, the claimant is no longer disabled. Id. If the claimant, based on his current residual functional capacity, cannot perform his past relevant work, then the Commissioner must determine whether the claimant, based on his age, education, work experience and current residual functional capacity, is capable of performing other work. 20 C.F.R. § 416.994(b)(5)(viii). If so, the claimant is no longer disabled; if not, the claimant's disability will continue. Id.

significant change from [her] last visit." Tr. at 382.  The record unequivocally indicates that at Hughes' last visit, her panic/anxiety disorder was "worsening" and "uncontrolled." Dr. Hornby's statement directly contradicts the ALJ's conclusion that Hughes' condition decreased in severity.  The ALJ cannot simply ignore this statement in his assessment of the severity of Hughes' panic/anxiety disorder on November 9, 2004.

The ALJ also misstates the record.  He provides that during the July visit, "it was noted that increased symptomatology motivated the claimant to begin compliance with her adjusted medication regimen." Tr. at 32.  He also states that Hughes "was taking Xanax as prescribed, rather than on an as needed basis, as she had previously taken it." Id. at 31.  There is no evidence that Hughes did not comply with the prescribed schedule for taking Xanax.  Each treatment note from Dr. Hornsby which lists Xanax as a prescribed medication instructs Hughes to take 0.5 milligrams every eight hours as needed for nervousness.  See generally Tr. at 350-53, 369, 377-78, 382.[8]  Although not relied on by the ALJ, Hughes testified both that she takes Xanax when she needs it and that she takes it every 8 hours.  Tr. at 434, 437.  This testimony is consistent with the July treatment notes which indicate that Hughes was taking Xanax daily.  Tr. at 369.  Additionally, no adjustment was made to Hughes' medication regimen for Xanax at the November visit.  Cf. Tr. at 382, with id. at 369.

Moreover, in examining Dr. Hornsby's treatment notes from the closed period to

---

[8] The Court points out that four treatment notes do not list Xanax as a prescribed medication.  Tr. at 376, 379-81.

those after November 9, 2004, there is no consistent pattern to Hughes' maintenance appointments that suddenly changed on November 9, 2004.  Cf. Tr. at 350 (providing no set time frame in which Hughes should return), 351 (instructing Hughes to return to clinic in one month), 369 (instructing Hughes to return to clinic in one month), with Tr. at 376, 378, 380 -81 (instructing Hughes to return to clinic in two weeks), 377 (instructing Hughes to return to clinic in one month), 379, 382 (instructing Hughes to return to clinic in three months).

Last, the evidence of record during the closed period includes a psychological evaluation conducted by David C. Ghostley, Psy. D., (Dr. Ghostley) and a psychiatric evaluation conducted by Shakir R. Meghani, M.D., (Dr. Meghani).  Dr. Ghostley opined in December 2003 that Hughes's prognosis was "excellent, provided she gets treatment in the form of psychotherapy;" however, "[w]ithout adjunct psychotherapy, her mental impairment is considered to be severe and highly limiting." Tr. at 329.  Dr. Meghani opined that Hughes had "prominent" anxiety symptoms and diagnosed her with major depressive disorder with anxiety symptoms. Tr. at 358-59.  Dr. Meghani's opinion was issued in late September 2004, approximately two months prior to the ALJ's determined improvement point and two months after Dr. Hornsby indicated that her panic/anxiety was worsening.  Neither of these evaluations were included in the ALJ's analysis of the severity of Hughes' panic/anxiety disorder during the closed period; the ALJ simply used one treatment note from Dr. Hornsby in July 2004.   In determining whether medical improvement occurred, he was required to compare Hughes' panic/anxiety disorder

11

during the closed period to that disorder after November 9, 2004. The ALJ cannot ignore this evidence in his comparison. While the undersigned recognizes that the ALJ is not required to specifically discuss every piece of evidence in the record, Dr. Ghostlely's and Dr. Meghani's evaluations are particularly relevant to the determination whether a medical improvement occurred, as they directly observed Hughes' panic/anxiety disorder during a time in which she was deemed disabled. Moreover, although Hughes chose to seek medical care from Dr. Hornsby for her panic/anxiety disorder, her testimony indicates that she could not afford to seek psychological or psychiatric treatment. Tr. at 434. And, Hughes conceded in her brief that Dr. Hornsby's "treatment of her mental impairments was limited to prescribing medication." Cf. Newsome ex rel. Bell v. Barnhart, 444 F. Supp. 2d 1195, 1198 n. 2 (M. D. Ala. 2006) (citing Ogranaja v. Commissioner of Social Security, 2006 WL 1526062, at *3 (11th Cir. 2006) (unpublished) ("We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole."); McCray v. Massanari, 175 F. Supp. 2d 1329, 1336 (M. D. Ala. 2001) (finding that the ALJ must consider all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand, but is not required to discuss every piece of evidence submitted. Further, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.)). Thus, the Court finds the ALJ's reasons discussed above do not support his medical improvement conclusion.

The ALJ provided three additional reasons in support of his medical improvement decision: the November treatment notes indicate that Hughes did not complain about adverse medication effects; the November notes also indicate that Hughes received an increased supply of medication; and no subsequent treatment note indicated a deterioration of her panic/anxiety condition.  The Court finds, in light of the record as a whole and, particularly, the discrepancies discussed above, this evidence does not adequately support the ALJ's conclusion that Hughes' condition improved.  Burress v. Apfel, 141 F.3d 875, 880 (8th Cir. 1998) (concluding that the objective medical evidence in the record failed to reveal any discrete improvement in claimant's condition); Udero v. Apfel, 1998 WL 487024 at *2 (10th Cir. Aug. 10, 1998) (unpublished) (indicating that "the ALJ must identify specific medical evidence . . . which leads him to conclude the claimant can perform substantial gainful activity" and citing Burress).  Consequently, that determination is not supported by substantial evidence.  The Court accordingly remands the ALJ's medical improvement determination for further proceedings consistent with this opinion.[9]

## V.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes that the decision of the Commissioner is unsupported by substantial evidence and is due to be reversed and remanded for further proceedings consistent with this opinion.  A separate

---

[9] In light of the above finding, the Court need not reach Plaintiff's credibility issue at this time.

order will issue.

DONE this 6th day of August, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE